**Fill in this information to identify the case:**

Debtor 1 _Tamal Ezell_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the District of MARYLAND

Case number _20-19592_



**EXHIBIT**

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | What is the current creditor? | WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else | [X] No<br>[ ] Yes.  From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent?<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | **Where should notices to the creditor be sent?**<br><br>Selene Finance, LP<br>Name<br><br>9990 Richmond Ave. Suite 400 South Attn: BK Dept<br>Number          Street<br><br>Houston, TX  77042<br>City                State            ZIP Code<br><br>Contact phone<br><br>Contact email<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one)<br><br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | **Where should payments to the creditor be sent?** (if different)<br><br>Selene Finance, LP<br>Name<br><br>9990 Richmond Ave. Suite 400 South Attn: BK Dept<br>Number          Street<br><br>Houston  TX  77042<br>City                State            ZIP Code<br><br>Contact phone<br><br>Contact email |
| 4. | Does this claim amend one already filed? | [X] No<br>[ ] Yes.   Claim number on court claim registry (if known) _____ | Filed on _____<br>          MM/DD/YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | [X] No<br>[ ] Yes.  Who made the earlier filing? _____ | |

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>4274</u> |

| | | |
|---|---|---|
| 7. | How much is the claim? | $ <u>414,046.47</u>  **Does this amount include interest or other charges?**<br>[ ] No<br>[X] Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>MONEY LOANED</u>

9. **Is all or part of the claim secured?**

[ ] No
[X] Yes    The claim is secured by a lien on property.

**Nature of property:**

[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim*
*Attachment* (Official Form 410-A) with this Proof of Claim.

[ ]   Motor vehicle
[ ]   Other. Describe:   <u>6207 GOTHIC LANE, BOWIE, MARYLAND 20720</u>

**Basis for perfection:**   <u>Mortgage/Deed of Trust</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $ <u>414,046.47</u>

**Amount of the claim that is unsecured:** $_____  (The sum of the secured and unsecured amounts should match the amount in line 7)

**Amount necessary to cure any default as of the date of the petition:**    <u>$127,714.97</u>

**Annual Interest Rate** (when case was filed) <u>4.2500</u>%
[X]    Fixed
[ ]    Variable

| | | |
|---|---|---|
| 10. | Is this claim based on a lease? | [X]  No<br>[ ]  Yes.  **Amount necessary to cure any default as of the date of the petition.**    $_____ |

| | | |
|---|---|---|
| 11. | Does this claim involve a right to setoff? | [X]  No<br>[ ]  Yes. Identify the property _____ |

Official Form 410A  **Mortgage Proof of Claim Attachment** Page 2 of 47

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)? | [X] No | | Amount entitled to priority |
|---|---|---|---|---|
| | | [ ] Yes. *Check one:* | | |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | | [ ] Up to $3,025* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | | $_____ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | | $_____ |
| | | [ ] Contributions to an employee benefit plan. 11 U.S.C. §507(a)(5). | | $_____ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | | $_____ |
| | | * Amount are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment | | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box

[ ]   I am the creditor.
[X]   I am the creditor's attorney or authorized agent.
[ ]   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ]   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1/4/2021_____
                            MM/DD/YYYY

/s/ Erin Elam____
        Signature

Print the name of the person who is completing and signing this claim:

**Erin Elam**
Authorized Agent for Secured Creditor
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
10700 Abbot's Bridge Rd, Suite 170
Duluth, GA, 30097
470-321-7112

[ ] Noteholder is the owner of the note.
[X] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
[ ] Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
[ ] Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 20-19592 |
| Debtor 1: | Tamal Ezell |
| Debtor 2: | |
| Last 4 digits to identify: | 4274 |
| Creditor: | Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust |
| Servicer: | Selene Finance LP |
| Fixed accrual/daily simple interest/other: | FIXED |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $295,488.84 |
| Deferred Principal: | |
| Interest due: | |
| Fees, costs due: | |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | - |
| Total debt: | $414,046.47 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $24,100.00 |
| Prepetition fees due: | $42,513.99 |
| Escrow deficiency for funds advanced: | $16,809.09 |
| Projected escrow shortage: | |
| Less funds on hand: | $35,134.55 |
| Total prepetition arrearage: | $0.00 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $71,925.58 |
| Monthly escrow: | $16,809.09 |
| Private mortgage insurance: | $35,134.55 |
| Total monthly payment: | $3,845.77 |
| | $0.00 |
| | $127,714.97 |
| | $1,253.96 |
| | $541.98 |
| | $0.00 |
| | $1,795.94 |

## Part 5: Loan Payment History from First Date of Default

### Account Activity

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 1/1/2000 | | | | Starting Balance | | $0.00 | | | | | | | | | $0.00 | $0.00 |
| 11/1/2013 | $1,512.15 | | | Payment Due | 11/1/2013 | $1,512.15 | | | | | | $300,913.57 | | | $0.00 | $0.00 |
| 11/13/2013 | | | ($982.00) | Homeowners Insurance | 11/1/2013 | $1,512.15 | | | ($982.00) | | | $300,913.57 | | ($982.00) | $0.00 | $0.00 |
| 11/23/2013 | | | ($2,020.49) | County Tax | 11/1/2013 | $1,512.15 | | | ($2,020.49) | | | $300,913.57 | | ($3,002.49) | $0.00 | $0.00 |
| 12/1/2013 | $1,512.15 | | | Payment Due | 11/1/2013 | $3,024.30 | | | | | | $300,913.57 | | ($3,002.49) | $0.00 | $0.00 |
| 1/1/2014 | $1,512.15 | | | Payment Due | 1/1/2013 | $4,536.45 | | | | | | $300,913.57 | | ($3,002.49) | $0.00 | $0.00 |
| 2/1/2014 | $1,356.79 | | | Payment Due | 1/1/2013 | $5,893.24 | | | | | | $300,913.57 | | ($3,002.49) | $0.00 | $0.00 |
| 2/20/2014 | | $1,512.30 | | Regular Payment | 11/1/2013 | $4,381.09 | $469.72 | $501.52 | $600.91 | | | $300,503.85 | | ($2,401.58) | $0.00 | $0.15 |
| 3/1/2014 | $1,356.79 | | | Payment Due | 12/1/2013 | $5,737.88 | | | | | $0.15 | $300,503.85 | | ($2,401.58) | $0.00 | $0.15 |
| 4/1/2014 | $1,356.79 | | | Payment Due | 12/1/2013 | $7,094.67 | | | | | | $300,503.85 | | ($2,401.58) | $0.00 | $0.15 |
| 4/4/2014 | | $1,512.15 | | Regular Payment | 12/1/2013 | $5,582.52 | $410.40 | $500.84 | $600.91 | | | $300,093.45 | | ($1,800.67) | $0.00 | $0.15 |
| 5/1/2014 | $1,356.79 | | | Payment Due | 1/1/2014 | $6,939.31 | | | | | | $300,093.45 | | ($1,800.67) | $0.00 | $0.15 |
| 5/6/2014 | | $1,512.15 | | Regular Payment | 1/1/2014 | $5,427.16 | $411.08 | $500.16 | $600.91 | | | $299,682.37 | | ($1,199.76) | $0.00 | $0.15 |
| 6/1/2014 | $1,356.79 | | | Payment Due | 2/1/2014 | $6,783.95 | | | | | | $299,682.37 | | ($1,199.76) | $0.00 | $0.15 |
| 6/6/2014 | | $1,356.79 | | Regular Payment | 2/1/2014 | $5,427.16 | $411.77 | $499.47 | $445.55 | | | $299,270.60 | | ($754.21) | $0.00 | $0.15 |
| 7/1/2014 | $1,356.79 | | | Payment Due | 3/1/2014 | $6,783.95 | | | | | | $299,270.60 | | ($754.21) | $0.00 | $0.15 |
| 7/26/2014 | $1,356.64 | | | Regular Payment | 3/1/2014 | $5,427.16 | $412.46 | $498.78 | $445.55 | | ($0.15) | $298,858.14 | | ($308.66) | $0.00 | $0.00 |
| 7/26/2014 | $1,356.79 | | | Regular Payment | 4/1/2014 | $4,070.37 | $413.14 | $498.10 | $445.55 | | | $298,445.00 | | $136.89 | $0.00 | $0.00 |
| 7/26/2014 | $1,356.79 | | | Regular Payment | 5/1/2014 | $2,713.58 | $413.83 | $497.41 | $445.55 | | | $298,031.17 | | $582.44 | $0.00 | $0.00 |
| 8/1/2014 | $1,356.79 | | | Payment Due | 6/1/2014 | $4,070.37 | | | | | | $298,031.17 | | $582.44 | $0.00 | $0.00 |
| 8/26/2014 | | | ($2,032.04) | County Tax | 6/1/2014 | $4,070.37 | | | ($2,032.04) | | | $298,031.17 | | ($1,449.60) | $0.00 | $0.00 |
| 9/1/2014 | $1,356.79 | | | Payment Due | 6/1/2014 | $5,427.16 | | | | | | $298,031.17 | | ($1,449.60) | $0.00 | $0.00 |

Official Form 410A

Mortgage Proof of Claim Attachment

page 1 of 5

(12/15)

(12/15)

# Mortgage Proof of Claim Attachment: Additional Page

| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Running total | Amount | Principal balance | Escrow balance | Fees or charges balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/30/2014 | | $1,356.79 | | Regular Payment | 6/1/2014 | $4,070.37 | $445.55 | $297,616.65 | ($1,014.05) | $0.00 |
| 9/30/2014 | | $1,356.79 | | Regular Payment | 7/1/2014 | $2,713.58 | $445.55 | $297,201.44 | ($558.50) | $0.00 |
| 10/1/2014 | $911.24 | | | Payment Due | 8/1/2014 | $3,624.82 | | $297,201.44 | ($558.50) | $0.00 |
| 10/13/2014 | $911.24 | | | Payment Due | 8/1/2014 | $4,536.06 | | $297,201.44 | ($558.50) | $0.00 |
| 11/14/2014 | | ($1,100.00) | | Homeowners Insurance | 8/1/2014 | $4,536.06 | $496.72 | $297,201.44 | ($558.50) | $0.00 |
| 11/18/2014 | | ($2,032.04) | | County Tax | 8/1/2014 | $5,447.30 | $496.03 | $296,740.94 | ($3,690.54) | $0.00 |
| 11/26/2014 | $911.24 | | | Payment Due | 8/1/2014 | $5,447.30 | $414.52 | $296,740.94 | ($3,690.54) | $0.00 |
| 12/17/2014 | | | $460.50 | Principal Adjustment | 8/1/2014 | $5,447.30 | $415.21 | $296,740.94 | ($3,690.54) | $0.00 |
| 12/23/2014 | $911.24 | | | Payment Due | 8/1/2014 | $6,358.54 | | $296,740.94 | ($3,690.54) | $0.00 |
| 1/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $7,269.78 | | $296,740.94 | ($3,690.54) | $0.00 |
| 2/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $8,181.02 | | $296,740.94 | ($3,690.54) | $0.00 |
| 3/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $9,092.26 | | $296,740.94 | ($3,690.54) | $0.00 |
| 4/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $10,003.50 | | $296,740.94 | ($3,690.54) | $0.00 |
| 5/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $10,914.74 | | $296,740.94 | ($3,690.54) | $0.00 |
| 6/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $11,825.98 | | $296,740.94 | ($3,690.54) | $0.00 |
| 7/1/2015 | | ($2,104.91) | | County Tax | 8/1/2014 | $12,737.22 | | $296,740.94 | ($5,795.45) | $0.00 |
| 7/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $12,737.22 | | $296,740.94 | ($5,795.45) | $0.00 |
| 8/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $13,648.46 | | $296,740.94 | ($5,795.45) | $0.00 |
| 9/1/2015 | | ($1,226.00) | | Homeowners Insurance | 8/1/2014 | $14,559.70 | | $296,740.94 | ($7,021.45) | $0.00 |
| 9/20/2015 | | ($2,104.90) | | County Tax | 8/1/2014 | $15,470.94 | | $296,740.94 | ($9,126.35) | $0.00 |
| 9/12/2015 | $911.24 | | | Payment Due | 8/1/2014 | $15,470.94 | | $296,740.94 | ($9,126.35) | $0.00 |
| 10/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $15,470.94 | | $296,740.94 | ($9,126.35) | $0.00 |
| 11/1/2015 | | | $11.50 | Property Inspection | 8/1/2014 | $16,382.18 | | $296,740.94 | ($9,126.35) | $11.50 |
| 11/17/2015 | | | $15.00 | Property Inspection | 8/1/2014 | $17,293.42 | | $296,740.94 | ($9,126.35) | $26.50 |
| 11/30/2015 | $911.24 | | | Payment Due | 8/1/2014 | $18,204.66 | | $296,740.94 | ($9,126.35) | $26.50 |
| 12/1/2015 | $911.24 | | | Payment Due | 8/1/2014 | $18,204.66 | | $296,740.94 | ($9,126.35) | $26.50 |
| 1/1/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $18,204.66 | | $296,740.94 | ($9,126.35) | $33.00 |
| 2/1/2016 | | | $15.00 | Property Inspection | 8/1/2014 | $19,115.90 | | $296,740.94 | ($9,126.35) | $221.49 |
| 2/12/2016 | $911.24 | | | Payment Due | 8/1/2014 | $19,115.90 | | $296,740.94 | ($9,126.35) | $221.49 |
| 2/24/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $19,115.90 | | $296,740.94 | ($9,126.35) | $221.49 |
| 3/1/2016 | | | $183.49 | FC Costs | 8/1/2014 | $20,027.14 | | $296,740.94 | ($9,126.35) | $221.49 |
| 3/6/2016 | $911.24 | | | Payment Due | 8/1/2014 | $20,027.14 | | $296,740.94 | ($9,126.35) | $221.49 |
| 3/31/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $20,027.14 | | $296,740.94 | ($9,126.35) | $322.99 |
| 4/1/2016 | | | $90.00 | Appraisal | 8/1/2014 | $20,938.38 | | $296,740.94 | ($9,126.35) | $322.99 |
| 4/4/2016 | $911.24 | | | Payment Due | 8/1/2014 | $20,938.38 | | $296,740.94 | ($9,126.35) | $334.49 |
| 4/29/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $20,938.38 | | $296,740.94 | ($9,126.35) | $334.49 |
| 5/1/2016 | | | $250.00 | BK Fees | 8/1/2014 | $21,849.62 | | $296,740.94 | ($9,126.35) | $584.49 |
| 5/22/2016 | | | $1,681.20 | FC Costs | 8/1/2014 | $21,849.62 | | $296,740.94 | ($9,126.35) | $2,265.69 |
| 5/9/2016 | $911.24 | | | Payment Due | 8/1/2014 | $22,760.86 | | $296,740.94 | ($9,126.35) | $2,265.69 |
| 5/12/2016 | | | $11.50 | FC Costs | 8/1/2014 | $22,760.86 | | $296,740.94 | ($9,126.35) | $2,277.19 |
| 6/1/2016 | $911.24 | | | Payment Due | 8/1/2014 | $23,672.10 | | $296,740.94 | ($9,126.35) | $2,277.19 |
| 6/13/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $23,672.10 | | $296,740.94 | ($9,126.35) | $2,288.69 |
| 6/6/2016 | | | $11.50 | Property Inspection | 8/1/2014 | $23,672.10 | | $296,740.94 | ($9,126.35) | $2,300.19 |
| 7/1/2016 | $911.24 | | | Payment Due | 8/1/2014 | $24,583.34 | | $296,740.94 | ($11,229.46) | $2,300.19 |
| 7/11/2016 | | ($2,103.111) | | County Tax | 8/1/2014 | $24,583.34 | $1,600.34 | $296,740.94 | ($11,229.46) | $2,300.19 |
| 8/1/2016 | | | $45.00 | Property Inspection | 8/1/2014 | $24,583.34 | $45.00 | $296,740.94 | ($11,229.46) | $3,900.53 |
| 8/25/2016 | | | $90.00 | FC Costs | 8/1/2014 | $24,583.34 | $90.00 | $296,740.94 | ($11,229.46) | $4,055.55 |
| 9/1/2016 | | | $11.50 | Appraisal | 8/1/2014 | $25,494.58 | $11.50 | $296,740.94 | ($11,229.46) | $4,047.03 |
| 10/1/2016 | $911.24 | | | Payment Due | 8/1/2014 | $25,494.58 | | $296,740.94 | ($12,231.46) | $4,047.03 |
| 10/18/2016 | | ($1,287.001) | | Homeowners Insurance | 8/1/2014 | $25,494.58 | | $296,740.94 | ($12,231.46) | $0.00 |

(12/15)

## Mortgage Proof of Claim Attachment: Additional Page

| Date | Fees | Description | Contractual Due Date | Amount | Charge | Principal Balance | Escrow Balance | | Total |
|---|---|---|---|---|---|---|---|---|---|
| 11/15/2016 | $911.24 | Payment Due | 8/1/2014 | $26,405.82 | | $296,740.94 | ($12,516.46) | $0.00 | $4,647.03 |
| 11/15/2016 | | Property Inspection | 8/1/2014 | $26,405.82 | $11.50 | $296,740.94 | ($12,516.46) | $0.00 | $4,058.53 |
| 12/1/2016 | $911.24 | Payment Due | 8/1/2014 | $27,317.06 | | $296,740.94 | ($12,516.46) | $0.00 | $4,058.53 |
| 12/5/2016 | | County Tax | 8/1/2014 | $27,317.06 | ($2,103.11) | $296,740.94 | ($14,619.57) | $0.00 | $4,058.53 |
| 1/1/2017 | $911.24 | Payment Due | 8/1/2014 | $28,228.30 | | $296,740.94 | ($14,619.57) | $0.00 | $4,408.53 |
| 1/9/2017 | | BK Fees | 8/1/2014 | $28,228.30 | $350.00 | $296,740.94 | ($14,619.57) | $0.00 | $4,708.53 |
| 1/9/2017 | | BK Fees | 8/1/2014 | $28,228.30 | $300.00 | $296,740.94 | ($14,619.57) | $0.00 | $4,720.03 |
| 1/19/2017 | | Property Inspection | 8/1/2014 | $28,228.30 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $4,720.03 |
| 2/1/2017 | $911.24 | Payment Due | 8/1/2014 | $29,139.54 | | $296,740.94 | ($14,619.57) | $0.00 | $4,720.03 |
| 2/7/2017 | | Property Inspection | 8/1/2014 | $29,139.54 | $75.00 | $296,740.94 | ($14,619.57) | $0.00 | $4,795.03 |
| 2/20/2017 | | Property Inspection | 8/1/2014 | $29,139.54 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $4,806.53 |
| 2/22/2017 | | Property Inspection | 8/1/2014 | $29,139.54 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $4,806.53 |
| 3/1/2017 | $911.24 | Payment Due | 8/1/2014 | $30,050.78 | | $296,740.94 | ($14,619.57) | $0.00 | $4,987.53 |
| 3/13/2017 | | BK Costs | 8/1/2014 | $30,050.78 | $181.00 | $296,740.94 | ($14,619.57) | $0.00 | $4,987.53 |
| 3/13/2017 | | FC Fees | 8/1/2014 | $30,050.78 | $850.00 | $296,740.94 | ($14,619.57) | $0.00 | $5,837.53 |
| 3/24/2017 | | BK Costs | 8/1/2014 | $30,050.78 | $50.00 | $296,740.94 | ($14,619.57) | $0.00 | $5,887.53 |
| 3/27/2017 | | Property Inspection | 8/1/2014 | $30,050.78 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $5,899.03 |
| 4/1/2017 | $911.24 | Payment Due | 8/1/2014 | $30,962.02 | | $296,740.94 | ($14,619.57) | $0.00 | $5,899.03 |
| 4/26/2017 | | Property Inspection | 8/1/2014 | $30,962.02 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $5,910.53 |
| 5/1/2017 | $911.24 | Payment Due | 8/1/2014 | $31,873.26 | | $296,740.94 | ($14,619.57) | $0.00 | $5,910.53 |
| 5/26/2017 | | Property Inspection | 8/1/2014 | $31,873.26 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $5,922.03 |
| 6/1/2017 | $911.24 | Payment Due | 8/1/2014 | $32,784.50 | | $296,740.94 | ($14,619.57) | $0.00 | $5,922.03 |
| 6/13/2017 | | TC Costs | 8/1/2014 | $32,784.50 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $5,933.53 |
| 7/1/2017 | $911.24 | Payment Due | 8/1/2014 | $33,695.74 | | $296,740.94 | ($14,619.57) | $0.00 | $5,933.53 |
| 7/8/2017 | | Property Inspection | 8/1/2014 | $33,695.74 | $11.50 | $296,740.94 | ($14,619.57) | $0.00 | $5,933.53 |
| 7/18/2017 | | FC Costs | 8/1/2014 | $33,695.74 | $125.00 | $296,740.94 | ($14,619.57) | $0.00 | $5,945.03 |
| 8/1/2017 | $911.24 | Payment Due | 8/1/2014 | $34,606.98 | | $296,740.94 | ($14,619.57) | $0.00 | $6,070.03 |
| 9/1/2017 | $911.24 | Payment Due | 8/1/2014 | $35,518.22 | | $296,740.94 | ($14,619.57) | $0.00 | $6,070.03 |
| 9/17/2017 | | County Tax | 8/1/2014 | $35,518.22 | ($2,276.31) | $296,740.94 | ($16,895.88) | $0.00 | $6,070.03 |
| 9/25/2017 | | Property Inspection | 8/1/2014 | $35,518.22 | $11.50 | $296,740.94 | ($16,895.88) | $0.00 | $6,070.03 |
| 10/1/2017 | $911.24 | Payment Due | 8/1/2014 | $36,429.46 | | $296,740.94 | ($16,895.88) | $0.00 | $6,070.03 |
| 10/16/2017 | | Property Inspection | 8/1/2014 | $36,429.46 | $11.50 | $296,740.94 | ($16,895.88) | $0.00 | $6,081.53 |
| 10/30/2017 | | Property Inspection | 8/1/2014 | $37,340.70 | $11.50 | $296,740.94 | ($16,895.88) | $0.00 | $6,081.53 |
| 11/1/2017 | $911.24 | Payment Due | 8/1/2014 | $37,340.70 | | $296,740.94 | ($16,895.88) | $0.00 | $6,093.03 |
| 11/14/2017 | | BK Fees | 8/1/2014 | $37,340.70 | $400.00 | $296,740.94 | ($16,895.88) | $0.00 | $6,093.03 |
| 11/22/2017 | | FC Costs | 8/1/2014 | $38,251.94 | $16.50 | $296,740.94 | ($16,895.88) | $0.00 | $6,493.03 |
| 12/1/2017 | $911.24 | Payment Due | 8/1/2014 | $38,251.94 | | $296,740.94 | ($16,895.88) | $0.00 | $6,509.53 |
| 12/17/2017 | | Homeowners Insurance | 8/1/2014 | $38,251.94 | ($1,436.00) | $296,740.94 | ($18,331.88) | $0.00 | $6,509.53 |
| 12/17/2017 | | County Tax | 8/1/2014 | $39,163.18 | ($2,276.31) | $296,740.94 | ($20,608.19) | $0.00 | $6,509.53 |
| 1/1/2018 | $911.24 | Payment Due | 8/1/2014 | $39,163.18 | | $296,740.94 | ($20,608.19) | $0.00 | $6,509.53 |
| 1/23/2018 | | Property Inspection | 8/1/2014 | $40,074.42 | $61.50 | $296,740.94 | ($20,608.19) | $0.00 | $6,571.03 |
| 2/1/2018 | $911.24 | Payment Due | 8/1/2014 | $40,985.66 | | $296,740.94 | ($20,608.19) | $0.00 | $6,571.03 |
| 3/1/2018 | $911.24 | Payment Due | 8/1/2014 | $40,985.66 | | $296,740.94 | ($20,608.19) | $0.00 | $6,571.03 |
| 3/26/2018 | | Property Inspection | 8/1/2014 | $41,896.90 | $15.00 | $296,740.94 | ($20,608.19) | $0.00 | $6,586.03 |
| 4/1/2018 | $911.24 | Payment Due | 8/1/2014 | $41,896.90 | | $296,740.94 | ($20,608.19) | $0.00 | $6,586.03 |
| 4/20/2018 | | Property Inspection | 8/1/2014 | $41,896.90 | $15.00 | $296,740.94 | ($20,608.19) | $0.00 | $6,601.03 |
| 4/26/2018 | | FC Costs | 8/1/2014 | $42,808.14 | $250.00 | $296,740.94 | ($20,608.19) | $0.00 | $6,851.03 |
| 5/1/2018 | $911.24 | Payment Due | 8/1/2014 | $42,808.14 | | $296,740.94 | ($20,608.19) | $0.00 | $6,851.03 |
| 5/21/2018 | | Property Inspection | 8/1/2014 | $42,808.14 | $15.00 | $296,740.94 | ($20,608.19) | $0.00 | $6,851.03 |
| 5/21/2018 | | Property Inspection | 8/1/2014 | $43,719.38 | $85.00 | $296,740.94 | ($21,608.19) | $0.00 | $6,866.03 |
| 6/1/2018 | $911.24 | Payment Due | 8/1/2014 | $43,719.38 | | $296,740.94 | ($21,608.19) | $0.00 | $6,951.03 |
| 6/20/2018 | | Property Inspection | 8/1/2014 | $43,719.38 | $2,674.50 | $296,740.94 | ($21,608.19) | $0.00 | $9,625.53 |
| 6/22/2018 | | FC Costs | 8/1/2014 | $43,719.38 | $16.50 | $296,740.94 | ($21,608.19) | $0.00 | $9,642.03 |

## Mortgage Proof of Claim Attachment: Additional Page

| Date | Amount | Description | Prepetition Arrears Balance | Contractual Due Date | Principal Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|
| 7/1/2018 | $911.24 | Payment Due | $44,630.62 | 8/1/2014 | $296,740.94 | ($20,608.19) | $9,642.03 | $0.00 |
| 7/1/2018 | $137.56 | FC Costs | $44,630.62 | 8/1/2014 | $296,740.94 | ($20,608.19) | $9,779.59 | $0.00 |
| 7/20/2018 | $16.50 | FC Costs | $44,630.62 | 8/1/2014 | $296,740.94 | ($20,608.19) | $9,796.09 | $0.00 |
| 8/1/2018 | $911.24 | Payment Due | $45,541.86 | 8/1/2014 | $296,740.94 | ($20,608.19) | $9,796.09 | $0.00 |
| 8/21/2018 | $16.50 | FC Costs | $45,541.86 | 8/1/2014 | $296,740.94 | ($23,055.97) | $9,812.59 | $0.00 |
| 8/30/2018 | ($2,447.78) | County Tax | $46,455.10 | 8/1/2014 | $296,740.94 | ($23,055.97) | $9,812.59 | $0.00 |
| 9/1/2018 | $911.24 | Payment Due | $46,455.10 | 8/1/2014 | $296,740.94 | ($23,055.97) | $9,837.59 | $0.00 |
| 9/20/2018 | $25.00 | Property Inspection | $46,453.10 | 8/1/2014 | $296,740.94 | ($23,055.97) | $9,839.09 | $0.00 |
| 9/20/2018 | $1.50 | FC Costs | $46,453.10 | 8/1/2014 | $296,740.94 | ($23,055.97) | $9,839.09 | $0.00 |
| 10/1/2018 | $911.24 | Payment Due | $47,364.34 | 8/1/2014 | $296,740.94 | ($23,065.97) | $10,189.09 | $0.00 |
| 10/24/2018 | $350.00 | FC Fees | $47,364.34 | 8/1/2014 | $296,740.94 | ($23,055.97) | $10,189.09 | $0.00 |
| 11/1/2018 | $1,658.65 | Payment Due | $48,422.99 | 8/1/2014 | $296,740.94 | ($24,585.97) | $10,689.09 | $0.00 |
| 11/8/2018 | ($1,530.00) | Homeowners Insurance | $48,422.99 | 9/1/2014 | $296,740.94 | ($24,585.97) | $10,989.09 | $0.00 |
| 11/13/2018 | $500.00 | BK Fees | $48,422.99 | 8/1/2014 | $296,740.94 | ($24,585.97) | $10,989.09 | $0.00 |
| 11/20/2018 | $300.00 | FC Costs | $48,422.99 | 8/1/2014 | $296,740.94 | ($27,033.74) | $11,005.59 | $0.00 |
| 12/1/2018 | $1,658.65 | Payment Due | $49,481.64 | 8/1/2014 | $296,740.94 | ($27,033.74) | $11,005.59 | $3,025.15 |
| 12/1/2018 | $16.50 | FC Costs | $49,481.64 | 8/1/2014 | $296,740.94 | ($27,033.74) | $11,005.59 | $3,025.15 |
| 12/21/2018 | ($2,447.77) | County Tax | $49,481.64 | 8/1/2014 | $296,740.94 | ($26,886.19) | $11,005.59 | $1,668.36 |
| 12/31/2018 | $3,025.15 | Suspense | $49,481.64 | 8/1/2014 | $296,740.94 | ($26,142.64) | $11,005.59 | $311.57 |
| 1/1/2019 | $1,658.65 | Payment Due | $50,540.29 | 8/1/2014 | $296,740.94 | ($26,142.64) | $11,022.09 | $311.57 |
| 1/2/2019 | ($1,356.79) | Regular Payment | $49,183.50 | 10/1/2014 | $296,324.27 | ($26,142.64) | $11,203.09 | $311.57 |
| 1/4/2019 | ($1,356.79) | Regular Payment | $49,183.50 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,053.09 | $311.57 |
| 1/19/2019 | $16.50 | Property Inspection | $47,826.71 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,069.59 | $311.57 |
| 2/1/2019 | $181.00 | BK Costs | $47,826.71 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,219.59 | $311.57 |
| 2/13/2019 | $850.00 | BK Fees | $47,826.71 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,236.09 | $311.57 |
| 2/20/2019 | $16.50 | Payment Due | $48,885.36 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,252.59 | $311.57 |
| 2/22/2019 | $16.50 | FC Costs | $48,885.36 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,269.09 | $311.57 |
| 3/1/2019 | $16.50 | FC Costs | $48,885.36 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,269.09 | $311.57 |
| 3/7/2019 | $1,658.65 | Payment Due | $49,944.01 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,285.59 | $311.57 |
| 3/12/2019 | $150.00 | BK Fees | $49,944.01 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,285.59 | $311.57 |
| 3/22/2019 | $16.50 | FC Costs | $49,944.01 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,302.09 | $311.57 |
| 4/1/2019 | $1,658.65 | Payment Due | $51,002.66 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,302.09 | $311.57 |
| 4/22/2019 | $16.50 | FC Costs | $51,002.66 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,318.59 | $311.57 |
| 5/1/2019 | $1,658.65 | Payment Due | $52,061.31 | 10/1/2014 | $295,906.90 | ($26,142.64) | $12,918.59 | $311.57 |
| 5/23/2019 | $16.50 | FC Costs | $52,061.31 | 10/1/2014 | $295,906.90 | ($26,142.64) | $13,878.59 | $311.57 |
| 6/1/2019 | $1,658.65 | Payment Due | $53,119.96 | 10/1/2014 | $295,906.90 | ($26,142.64) | $13,878.59 | $311.57 |
| 7/1/2019 | $1,658.65 | Payment Due | $54,178.61 | 10/1/2014 | $295,906.90 | ($26,142.64) | $14,778.59 | $311.57 |
| 7/11/2019 | $1,658.65 | Payment Due | $55,237.26 | 10/1/2014 | $295,906.90 | ($26,142.64) | $14,778.59 | $311.57 |
| 8/1/2019 | $16.50 | FC Costs | $55,237.26 | 10/1/2014 | $295,906.90 | ($26,142.64) | $15,253.59 | $311.57 |
| 9/24/2019 | ($2,623.73) | County Tax | $56,295.91 | 10/1/2014 | $295,906.90 | ($28,766.37) | $15,253.59 | $311.57 |
| 9/26/2019 | $16.50 | Payment Due | $56,295.91 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 9/1/2019 | $1,658.65 | Property Inspection | $56,295.91 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 9/20/2019 | $16.50 | Payment Due | $57,354.56 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 10/1/2019 | ($1,398.00) | Homeowners Insurance | $57,354.56 | 10/1/2014 | $295,906.90 | ($31,164.37) | $15,253.59 | $311.57 |
| 10/18/2019 | $16.50 | FC Costs | $57,354.56 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 10/22/2019 | $600.00 | FC Fees | $57,354.56 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 10/23/2019 | $660.00 | FC Costs | $57,354.56 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 10/23/2019 | $16.50 | FC Costs | $57,354.56 | 10/1/2014 | $295,906.90 | ($30,164.37) | $15,253.59 | $311.57 |
| 11/1/2019 | $1,214.25 | Payment Due | $58,568.81 | 10/1/2014 | $295,906.90 | ($32,788.10) | $15,253.59 | $311.57 |
| 11/27/2019 | $900.00 | FC Costs | $58,568.81 | 10/1/2014 | $295,906.90 | ($32,788.10) | $15,253.59 | $311.57 |
| 12/1/2019 | $1,214.25 | Payment Due | $59,783.06 | 10/1/2014 | $295,906.90 | ($32,788.10) | $15,253.59 | $311.57 |
| 12/12/2019 | ($2,623.73) | County Tax | $59,783.06 | 10/1/2014 | $295,906.90 | ($32,788.10) | $15,253.59 | $311.57 |
| 12/26/2019 | $475.00 | BK Fees | $59,783.06 | 10/1/2014 | $295,906.90 | ($32,788.10) | $15,253.59 | $311.57 |

## Mortgage Proof of Claim Attachment: Additional Page

| Date | Amount | Description | Date | Total | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/31/2019 | $16.50 | FC Costs | 10/1/2014 | $59,783.06 | | $16.50 | $295,906.90 | ($32,788.10) | $15,270.09 | $311.57 |
| 1/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $60,997.31 | | | $295,906.90 | ($32,788.10) | $15,270.09 | $311.57 |
| 2/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $62,211.56 | | | $295,906.90 | ($32,788.10) | $15,270.09 | $311.57 |
| 2/10/2020 | $1,231.00 | BK Fees | 10/1/2014 | $62,211.56 | | $1,231.00 | $295,906.90 | ($32,788.10) | $16,501.09 | $311.57 |
| 2/27/2020 | $16.50 | FC Costs | 10/1/2014 | $62,211.56 | | $16.50 | $295,906.90 | ($32,788.10) | $16,517.59 | $311.57 |
| 3/1/2020 | | Payment Due | 10/1/2014 | $63,425.81 | | | $295,906.90 | ($32,788.10) | $16,517.59 | $311.57 |
| 3/11/2020 | $125.00 | FC Fees | 10/1/2014 | $63,425.81 | | $125.00 | $295,906.90 | ($32,788.10) | $16,642.59 | $311.57 |
| 3/26/2020 | $16.50 | FC Costs | 10/1/2014 | $63,425.81 | | $16.50 | $295,906.90 | ($32,788.10) | $16,659.09 | $311.57 |
| 4/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $64,640.06 | | | $295,906.90 | ($32,788.10) | $16,659.09 | $311.57 |
| 4/22/2020 | $150.00 | BK Fees | 10/1/2014 | $64,640.06 | | $150.00 | $295,906.90 | ($32,788.10) | $16,809.09 | $311.57 |
| 5/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $65,854.31 | | | $295,906.90 | ($32,788.10) | $16,809.09 | $311.57 |
| 6/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $67,068.56 | | | $295,906.90 | ($32,788.10) | $16,809.09 | $311.57 |
| 7/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $68,282.81 | | | $295,906.90 | ($32,788.10) | $16,809.09 | $311.57 |
| 8/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $69,497.06 | $311.57 | | $295,906.90 | ($32,788.10) | $16,809.09 | $311.57 |
| 8/6/2020 | | Funds to Escrow | 10/1/2014 | $69,497.06 | | ($311.57) | $295,906.90 | ($32,476.53) | $16,809.09 | $0.00 |
| 9/1/2020 | $1,214.25 | Payment Due | 10/1/2014 | $70,711.31 | | | $295,906.90 | ($32,476.53) | $16,809.09 | $0.00 |
| 9/2/2020 | ($2,658.02) | County Tax | 10/1/2014 | $70,711.31 | ($2,658.02) | | $295,906.90 | ($35,134.55) | $16,809.09 | $0.00 |
| 9/3/2020 | $1,214.25 | Payment Due | 10/1/2014 | $71,925.56 | | | $295,906.90 | ($35,134.55) | $16,809.09 | $0.00 |
| 10/26/2020 | | BK Filed | 10/1/2014 | $71,925.56 | | | $295,906.90 | ($35,134.55) | $16,809.09 | $0.00 |

**ANALYSIS/REVIEW - PROJECTION STATEMENT**614     1/04/2021 9:58:54 AM ET    PFSP342

| Account No | Statement: Type | BRR POC EA | Date | 11/02/20 |
|---|---|---|---|---|

| SHORTAGE WAS BILLED | BRR | POC ESC SHORT | 3360.56 |

### Analysis Based On

| Anticipated Disbursements | 6503.79 | CP Index Factor | 0.00% |
|---|---|---|---|
| Ideal Escrow Payment | 541.98 | Cushion C-1/6 | 1083.96 |
| Cycle | 11/01/20 - 10/31/21 | RESPA Max 1/6 Cushion | 1083.96 |
| Analysis Parameter Review | No ⌄ | Loan Status Review | No ⌄ |
| Anticipated Escrow Balance Detail | No ⌄ | Current PITI | 1356.79 |

### Results

| Lowpoint Month: 12/20 | Anticipated Bal | -2276.60 | Required Bal | 1083.96 |
|---|---|---|---|---|
| SHORTAGE -3360.56 | DEFICIENCY | .00 | ADJ SHORTAGE | .00 |
| EA Shortage Spread Used | 0 | | View Trial Bal Detail | No ⌄ |

| ---- OLD ---- | ------ PAYMENT DETAIL ------ | --- NEW EFF 11/01/20 - |
|---|---|---|
| 1214.25 | PRINCIPAL & INTEREST | 1253.96 |
| 619.90 | ESCROW | 541.98 |
| .00 | OPTIONAL INS | .00 |
| .00 | ANCILLARY | .00 |
| .00 | SHORTAGE | .00 |
| .00 | DEFICIENCY | .00 |
| .00 | SURPLUS | .00 |
| .00 | ROUNDING (+/ -) | .00 |
| .00 | BUYDOWN/ASST PMT | .00 |
| 1834.15 | TOTAL BORROWER PAYMENT | 1795.94 |

Message:                          OK                      MORE...



# NOTE

APRIL 1, 2005
[Date]

OVERLAND PARK
[City]

KANSAS
[State]

6207 GOTHIC LANE, BOWIE, MARYLAND 20720
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 260,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF BLUE VALLEY, A KANSAS BANKING CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JUNE 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7900 COLLEGE BOULEVARD, OVERLAND PARK, KANSAS 66210
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,517.29

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01

Page 1 of 3

DocMagic ☎ 800-649-1362
www.docmagic.com

Us3200.not.1.tem

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED
(A)   Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5 . 0 0 0 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.
(B)   Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C)   Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D)   No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E)   Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                                         Page 2 of 3

DocMagic eFirms 800-849-1362
www.docmagic.com

Us3200.not.2.tem

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

  If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.
THIS LOAN TRANSACTION IS GOVERNED BY TITLE 12, SUBTITLE 10 OF
THE COMMERCIAL LAW ARTICLE OF THE ANNOTATED CODE OF MARYLAND.


_____ (Seal)   _____ (Seal)
TAMAL W. EZELL   -Borrower        -Borrower


_____ (Seal)   _____ (Seal)
         -Borrower        -Borrower


_____ (Seal)   _____ (Seal)
         -Borrower        -Borrower


PAY TO THE ORDER OF:
WASHINGTON MUTUAL BANK, FA WITHOUT RECOURSE

BANK OF BLUE VALLEY, A KANSAS BANKING CORPORATION

BY: _____
  GINNY SNOUFFER          [Sign Original Only]

ITS: VICE PRESIDENT

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Page 3 of 3
Form 3200 1/01

DocMagic *EForms* 800-649-1362
www.docmagic.com

Us3200.not.3.lem

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By _____
MICHELE MULLHOLAND
VICE PRESIDENT

19801   122

## Clerk of the Circuit Court

2004 JUN 25 AM 9: 22

PR GEO CO MD #9

[Space Above This Line For Recording Data]

## DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

A) "**Security Instrument**" means this document, which is dated **MAY 27, 2004** together with all Riders to this document.

(B) "Borrower" is **TAMAL W. EZELL, AN UNMARRIED MAN**

```
INP FD SURE $        20.00
RECORDING FEE        20.00
TOTAL                40.00
Rec# PG13
REP    RLH    Blk # 10985
Jun 25, 2004      09:18 am
```

Borrower is the Trustor under this Security Instrument.
(C) "**Lender**" is     **PINNACLE FINANCIAL CORPORATION**

Lender is a     **CORPORATION**                                          organized and existing under the laws of **FLORIDA**                              . Lender's address is **2611 TECHNOLOGY DRIVE ORLANDO, FL 32804**

(D) "Trustee" is     **HUNT & SUSS, LLC**

(E) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated     **MAY 27, 2004**
The Note states that Borrower owes Lender
**TWO HUNDRED FIFTY-SIX THOUSAND FIVE HUNDRED AND 00/100**
Dollars (U.S. $ **256,500.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     **JUNE 1, 2034**

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate | ☐ Rider Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Other(s) [specify] | |

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3021 1/01
DOCUKMD1
DOCUKMD1.VTX  10/11/2002                    (page 1 of 13 pages)

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 19801, p. 0122, 2. Date available 09/24/2004. Printed 05/04/2016.

19801   123

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage's described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                    of      PRINCE GEORGE'S
        [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
LOT NUMBERED FOURTY-FOUR (44) IN BLOCK LETTERED "A" IN THE SUBDIVISION KNOWN AS "PLAT TWO, HIGHBRIDGE", AS PER PLAT THEREOF RECORDED IN PLAT BOOK NLP 142 AT PLAT 99, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND.

which currently has the address of        6207 GOTHIC LANE
                                                              [Street]
BOWIE                         , Maryland      20720           ("Property Address"):
        [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but no limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3021 1/01
DOCUKMD2
DOCUKMD2.VTX   10/16/2002                     (page 2 of 13 pages)

Date available 09/24/2004. Printed 05/04/2016.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 19801, p. 0123.

19801    1.24

## LEGAL DESCRIPTION

Borrower: TAMAL W. EZELL

Parcel Number:
LOT NUMBERED FOURTY-FOUR (44) IN BLOCK LETTERED "A" IN THE SUBDIVISION KNOWN AS
"PLAT TWO, HIGHBRIDGE", AS PER PLAT THEREOF RECORDED IN PLAT BOOK NLP 142 AT PLAT
99, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 19801, p. 0124. Date available 09/24/2004. Printed 05/04/2016.

i9801   i25 i

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3021 1/01
DOCUKMD3
DOCUKMD3.VTX  10/18/2000                        (page 3 of 13 pages)

pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3021 1/01
DOCUKMD4                                                          (page 4 of 13 pages)
DOCUKMD4.VTX  10/18/2002

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REF 19801, p. 0126.   Date available 09/24/2004. Printed 05/04/2010.

19801   127

charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverage's described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment) All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2. If borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3021 1/01
DOCUKMD5                                        (page 5 of 13 pages)
DOCUD05.VTX  10/18/2002

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MEF 19801, p. 0127.  Date available 05/24/2004.  Printed 05/04/2016.

are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3021 1/01
DOCUKM04
DOCUDOS.VTX 10/15/2003                          (page 6 of 13 pages)

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3021 1/01

DOCUKMD7
DOCUKMD7.VTX   10/18/2002
(page 7 of 13 pages)

Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender. A. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c)
agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received

MARYLAND--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**            Form 3021 1/01
DOCUKMD8                                                    (page 8 of 13 pages)
DOCUKMD8.VTX  10/18/2002

by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments  should be made and any other information RESPA requires in connection with a notice.) of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3021 1/01
DOCUKMD9                                          (page 9 of 13 pages)
DOCUKMD9.VTX   10/18/2002

19801 132

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup..

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any**

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021 1/01
DOCUKMD10                            (page 10 of 13 pages)
DOCUKMDA.VTX  10/18/2002

Date available 09/24/2004. Printed 05/04/2016.    REF 19801, p. 0132.    PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records)

19801 133

previously scheduled sale and by notice to any other persons as required by Applicable Law, Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5 . 000        % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to ) Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Possession of the Property. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

Date available 09/24/2004. Printed 05/04/2016.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REF 19801, p. 0133.

19801    134

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____     5/27/04
- BORROWER  -  TAMAL  W  EZELL  -  DATE  -

Date available 09/24/2004. Printed 05/04/2016.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REF 19801, p. 0134

19801 135

Date available 09/24/2004 Printed 05/04/2016.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) MEP 19801, p. 0135.

_____ [Space Below This Line Acknowledgment] _____

### STATE OF MARYLAND  PRINCE GEORGE'S

County ss:

I Hereby Certify, That on this **27th** day of **May, 2004** , before me, the subscriber, a Notary Public of the State of Maryland, in and for the **County of Prince George's**, personally appeared

**TAMAL W. EZELL**

known to me or satisfactorily proven to be the person(s) whose name(s) **is** subscribed to the within instrument and acknowledged that **he** executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission expires:

BETTYANN LEDFORD  
NOTARY PUBLIC  
PRINCE GEORGE'S COUNTY  
MARYLAND  
My Commission Expires Sept. 1, 2006

Notary Public

**STATE OF  MARYLAND, PRINCE GEORGE'S**

County ss:

I Hereby Certify, That on this **27th** day of **May, 2004** before me, the subscriber, a Notary Public of the State of **Maryland** and for the **County of Prince George's** personally appeared _____ **SONONA BAZEMORE** _____,

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective settlement agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS:  my hand and notarial seal.

My Commission expires:

BETTYANN LEDFORD  
NOTARY PUBLIC  
PRINCE GEORGE'S COUNTY  
MARYLAND  
My Commission Expires Sept. 1, 2006

Notary Public

This is to certify that the within instrument has been prepared by ~~an appropriate document~~ or under the supervision of an Attorney licensed to practice before the Court of Appeals of Maryland.

Authorized Party **CHRISTOPHER P. SUSS**

When Recorded Return To:  
**PINNACLE FINANCIAL CORPORATION**

**2611 TECHNOLOGY DRIVE**  
**ORLANDO, FL 32804**  
**ATTN:**

19801  136

Date available 09/24/2004. Printed 05/04/2016.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REF 19801, p. 0136

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **27TH** day of **MAY 2004**                   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure
Borrower's Note to **PINNACLE FINANCIAL CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**6207 GOTHIC LANE, BOWIE, MD 20720**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in
**THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE
PROPERTY.**

(the "Declaration"). The Property is a part of a planned unit development known as
**HIGHBRIDGE**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest.

   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3150 1/01
*(page 1 of 3 pages)*
DOCURPAI
DOCURPAI.VTX   10/11/2003

19801   137

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Date available 09/24/2004  Printed 05/04/2016
PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REF 19801, p. 0137,

19801    138

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____  5/27/04
- BORROWER -  TAMAL W. EZELL  - DATE -

Date available 09/24/2004. Printed 05/04/2010.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) RLP 19801, p. 0138.

**MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3150 1/01**
*(page 3 of 3 pages)*
DOCURPA3
DOCURPA3.VTX   10/13/2003

**31809 154**

Date available 06/30/2010. Printed 05/04/2016.

MERS Phone: 1-888-679-6377

Clerk of the
Circuit Court

²⁹⁰ JUN 24 AM 9: 58

PR GEO CO MD #71

### ASSIGNMENT

**FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")**, Assignor herein, its successor and assigns, hereby assigned and transferred to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, Assignee herein, with an address of c/o JPMorgan Chase Bank, National Association, 7255 Baymeadows Way, Jacksonville, Florida 32256, its successors and assigns, all right, title, and interest in and unto a certain Deed of Trust, dated April 1, 2005 and executed by TAMAL W. EZELL to TRANSTAR NATIONAL TITLE, Trustee, securing an indebtedness in the original amount of $260,000.00 , and recorded at Liber 22084 at Folio 678 , among the land records of the COUNTY OF PRINCE GEORGE'S , MD.

Commonly known as 6207 GOTHIC LANE *, Bowie, MD

Signed on this 22nd day of June, 2010

ASSIGNOR: Mortgage Electronic Registration Systems, Inc. ("MERS")

By: _____

(Seal)

Name: Leanna Kennebeck
Title: Vice President

STATE OF VIRGINIA        )
COUNTY OF FAIRFAX      ) SS.

INP FD SURE $          20.00
RECORDING FEE         20.00
TOTAL                 40.00
Rec# PG04

Blk # 6157
09:56 am

On June 22, 2010, before me, Angela Johnson, personally appeared  Leanna Kennebeck personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public
My Commission expires:

PREPARED BY: SHAPIRO & BURSON, LLP
13135 Lee Jackson Highway,
Suite 201, Fairfax, Virginia 22033

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 31809, p. 0154



38167 270

Clerk of the
Circuit Court

2016 MAY 10 AM 9: 23

PR GEO CO MD #03

I hereby certify that this instrument has been prepared by:

*Carly Kolo*

**CARLY R. KOLO**

☒ under the supervision of the above signed
  Maryland Attorney.
☐ one of the parties named in this instrument.
  Printed Name: WILLIAM H. PEIRSON
  Title:
  Company Name: PEIRSONPATTERSON, LLP

After recording please return to:

Meridian Asset Services, Inc.
780 94th Avenue N. Ste. 102
St. Petersburg, FL 33702

LR - Assignment
Recording Fee        20.00
Grantor/Grantee Name:
JPMORGAN/EZELL
Reference/Control #:
LR - Assignment
Surcharge            40.00
=========================
SubTotal:            60.00
=========================
Total:              120.00
05/10/2016    09:24
                  CC16-AS

Prince George's
County/CC07 03 02

—————————————[Space Above This Line For Recording Data]—————————————

# MARYLAND ASSIGNMENT OF DEED OF TRUST

For Value Received, JPMorgan Chase Bank, National Association, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **Pretium Mortgage Credit Partners I Loan Acquisition, LP**, (herein "Assignee"), whose address is **120 South 6th Street, Suite 2100, Minneapolis, MN 55402**, all beneficial interest under a certain Deed of Trust dated **April 1, 2005** and recorded on **May 16, 2005**, made and executed by **TAMAL W. EZELL** to **TRANSTAR NATIONAL TITLE**, Trustee, upon the following described property situated in **PRINCE GEORGE'S** County, State of Maryland:
Property Address: **6207 GOTHIC LANE, BOWIE, MD 20720**

such Deed of Trust having been given to secure payment of **Two Hundred Sixty Thousand and 00/100ths ($260,000.00)**, which Deed of Trust is of record in Book, Volume, or Liber No. **22084**, at Page **678** (or as No. **N/A**), in the Office of the County Recorder of **PRINCE GEORGE'S** County, State of Maryland.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

38167  271

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on Jan. 22, 2016.

Property Tax ID No.: 14-1636372

Assignor:
JPMorgan Chase Bank, National Association

By: _____

KARNETRAS M. DUNCAN

VICE PRESIDENT

Its: _____

**ACKNOWLEDGMENT**

State of Louisiana

§
§
§

Parish of Ouachita

On this 22nd day of January 2016, before me appeared **KARNETRAS M. DUHCAN**, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the **VICE PRESIDENT**, of JPMorgan Chase Bank, National Association, and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its board of directors and that **KARNETRAS M. DUNCAN** acknowledged the instrument to be the free act and deed of the said entity.

_____
Signature of Officer

WANDA INEZ KINSER

_____
Printed Name

NOTARY PUBLIC

_____
Title of Officer

(Seal)

My Commission Expires: _____

Maryland Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3297

Page 2 of 2

L73108MD 01/12 Rev. 02/14

**38167  272**

**Clerk of the
Circuit Court**

2016 MAY 10  AM 9: 24

**PR GEO CO MD #03**

```
LR - Assignment
Recording Fee      20.00
Grantor/Grantee Name:
PRETIUM/EZELL
Reference/Control #:
LR - Assignment
Surcharge          40.00
======================
SubTotal:          60.00
======================
Total:            120.00
05/10/2016   09:24
                 CC16-AS

Prince George's
County/CC07.03.02 -
Register 02
```

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94ᵗʰ Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Z

_____ Space above for Recorder's use _____

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP, whose address is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402, (ASSIGNOR), does hereby grant, assign and transfer to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, whose address is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 4/1/2005
Original Loan Amount: $260,000.00
Executed by (Borrower(s)): TAMAL W. EZELL
Original Trustee: TRANSTAR NATIONAL TITLE
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BANK OF BLUE VALLEY, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book 22084, Page 678,
Document/Instrument No: N/A in the Office of County Recorder of PRINCE GEORGE'S County, MD, Recorded on 5/16/2005.

Legal Description:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 6207 GOTHIC LANE, BOWIE, MARYLAND 20720

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  2 / 1 / 16

PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP

By: ALEKHYA FARWIG
Title: AUTHORIZED SIGNATORY

Witness Name: Sourish Ghosh

38167    273

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **MINNESOTA**
County of    **HENNEPIN**

On ___2·1·16___, before me, **THU VAN WITTMANN**, a Notary Public, personally
appeared **ALEKHYA FARWIG, AUTHORIZED SIGNATORY** of/for **PRETIUM MORTGAGE CREDIT
PARTNERS I LOAN ACQUISITION, LP**, personally known to me, or who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **MINNESOTA**
that the foregoing paragraph is true and correct. I further certify **ALEKHYA FARWIG**, signed, sealed, attested and
delivered this document as a voluntary act in my presence.

Witness my hand and official seal.



(Notary Name): **THU VAN WITTMANN**
My commission expires: 1/31/2018

THU VAN WITTMANN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2018

38167 274

## EXHIBIT "A"

The following described property situate in the County of Prince George's, City of Bowie and State of Maryland:

Lot Numbered Forty Four (44) in Block Lettered "A" in the Subdivision known as "Plat Two, Highbridge", as per plat thereof recorded in Plat Book NLP 142, at Plat 59, among the land records of Prince George's County, Maryland. Being in the 14th Election District of said County.

35902   362

Clerk of the
Circuit Court

2014 APR 21   AM 9: 00

PR GEO CO MD #89

IMP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Rec# PG06
MMD        HH        Blk # 4708
Apr 21, 2014         09:00 am

———— [Space Above This Line For Recording Data] ————

# HOME AFFORDABLE MODIFICATION AGREEMENT

This modification adds the amount of $81,716.11 to the current principal balance of $243,297.46, and represents capitalized interest, fees, expenses, and other amounts due under the terms of the original Mortgage/Deed of Trust/Trust Deed. The new unpaid principal balance of the loan, as modified, is $325,013.57. The original principal balance of the loan on which mortgage/recording taxes were previously paid was $260,000.00.

Borrower ("I"):[1] **TAMAL W EZELL** whose address is **6207 GOTHIC LN, BOWIE, MARYLAND 20720-5332**
Lender or Servicer ("Lender"): **JPMORGAN CHASE BANK, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **APRIL 01, 2005**

Property Address ("Property"): **6207 GOTHIC LN, BOWIE, MARYLAND 20720**
**LEGAL DESCRIPTION:**
**THE LAND IS SITUATED IN THE STATE OF MARYLAND, COUNTY OF PRINCE GEORGE'S, CITY OF BOWIE, AND DESCRIBED AS FOLLOWS: LOT NUMBERED FORTY-FOUR (44) IN BLOCK LETTERED "A" IN THE SUBDIVISION KNOWN AS "PLAT TWO, HIGHBRIDGE", AS PER PLAT THEREOF RECORDED IN PLAT BOOK NLP 142, AT PLAT 99, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND. BEING IN THE 14TH ELECTION DISTRICT OF SAID COUNTY.**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED MAY 16, 2005 BOOK 22084 PAGE 678, RE-RECORDED MAY 16, 2005 BOOK 32223**

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 10_10_2013_11_00_29    OP362/Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

(page 1 of 11 pages)

35902 363

**PAGE 610**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. The Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

   H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT ver. 10_10_2013_11_00_29 OP362/Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

*(page 2 of 11 pages)*

35902    364

A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **NOVEMBER 01, 2013** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **NOVEMBER 01, 2013.**

A.  The Maturity Date will be: **OCTOBER 01, 2053.**

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$325,013.57** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  **$24,100.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$300,913.57.** Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **OCTOBER 01, 2013** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **NOVEMBER 01, 2013.** My payment schedule for the modified Loan is as follows:

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT  ver. 10_10_2013_11_00_29  OP362/Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

35902   365

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 10/01/2013 | $911.24 | $600.91 May adjust periodically | $1,512.15 May adjust periodically | 11/01/2013 | 60 |
| 6 | 3.000% | 10/01/2018 | $1,058.65 | May adjust periodically | May adjust periodically | 11/01/2018 | 12 |
| 7 | 4.000% | 10/01/2019 | $1,214.25 | May adjust periodically | May adjust periodically | 11/01/2019 | 12 |
| 8-40 | 4.250% | 10/01/2020 | $1,253.96 | May adjust periodically | May adjust periodically | 11/01/2020 | 396 |

\*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac   UNIFORM INSTRUMENT   ver. 10_10_2013_11_00_29   OP362/Form 3157   3/09 (rev. 7/12)(CHF rev. 07/12)

*(page 4 of 11 pages)*

35902    366

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement or by the United States Bankruptcy Code, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That, if I am in bankruptcy upon execution of this document, I will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. I understand that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

E. Intentionally Deleted.

F. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 10_10_2013_11_00_29    OP362/Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

35902    367

understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement or by the United States Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 10_10_2013_11_00_29    OP362/Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

35902    368

and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.O. shall be referred to as "Documents."   I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Q. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 10_10_2013_11_00_29    OP362/Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

35902   369

loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac   UNIFORM INSTRUMENT     ver. 10_10_2013_11_00_29     OP362/Form 3157   3/09 (rev. 7/12)(CHF rev. 07/12)**

35902   370

**TO BE SIGNED BY BORROWER ONLY**

**BORROWER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN
JPMORGAN CHASE BANK, N.A. And TAMAL W EZELL, LOAN NUMBER ██████ WITH A
MODIFICATION EFFECTIVE DATE OF November 01, 2013

In Witness Whereof, the Borrower(s) have executed this agreement.

_____     Date: _11_ / _5_ / _13_
Borrower - **TAMAL W EZELL**

State of MARYLAND, BALTIMORE CITY County (or Baltimore City), to wit:

On this ___5ᵗʰ___ day of ___NOVEMBER___, ___2013___, before me, the
undersigned officer, personally appeared **TAMAL W EZELL**, known to me (or satisfactorily proven) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed
the same for the purposes therein contained.
In witness hereof I hereunto set my hand and official seal.

**MARIO E. RIVERA**
**NOTARY PUBLIC STATE OF MARYLAND**
**My Commission Expires November 21, 2018**

Notary Public _____
Print Name: MARIO RIVERA

My Commission Expires on: _____



**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 10_10_2013_11_00_29   OP302/Form 3157  3/09 (rev. 7/12)(CHF rev.
07/12)**

35902   371

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN
JPMORGAN CHASE BANK, N.A. And TAMAL W EZELL, LOAN NUMBER ▮▮▮▮▮ WITH A
MODIFICATION EFFECTIVE DATE OF November 01, 2013

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:

Brenda Nevarez-Quiroga
Vice President

Date: _____ 11·20·13

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 10_10_2013_11_00_29    OP362/Form 3157  3/09 (rev. 7/12)(CHF rev.
07/12)

35902  372

State of COLORADO
County of DENVER

The foregoing instrument was acknowledged before me this _20_ day of _November_,
_2013_ by _____Brenda Nevarez-quiroga_____, Vice President of JPMORGAN CHASE BANK,
N.A., a national banking association.

_____
(signature of person taking acknowledgment)
Printed Name: **Cary Moore-Davis**

[SEAL]
_____Notary_____
(title or rank)

_____
(serial number, if any)

My Commission expires: _5·22·16_

I HEREBY CERTIFY that the foregoing instrument was prepared by JPMORGAN CHASE BANK, N.A., which is
one of the parties to the instrument.

Signature: _Geraldine Cooks_

**Geraldine Cooks**
**Vice President**

JPMORGAN CHASE BANK, N.A.

Recording Requested By/Return To:
**JPMORGAN CHASE BANK, N.A.**
**CHASE RECORDS CENTER**
**RE: COLLATERAL TRAILING DOCUMENTS**
**PO BOX 8000**
**MONROE, LA 71203**

> **CARY MOORE-DAVIS**
> **NOTARY PUBLIC**
> **STATE OF COLORADO**
> MY COMMISSION EXPIRES 5-22-2016

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac UNIFORM INSTRUMENT   ver. 10_10_2013_11_00_29   OP362/Form 3157  3/09 (rev. 7/12)(CHF rev.
07/12)**